ARNOLD v. SPRING et al.

(Supreme Court, Equity Term, Allegany County.  April, 1912.)

1. LOGS AND LOGGING (§ 3*)—SALES AND CONVEYANCES OF STANDING TIMBER—VENDOR'S LIEN—ESTOPPEL TO ASSERT.

Though before a sale of standing timber the owner told persons who afterwards bought it from the first vendee that he would sell it for cash, it was not a statement of an existing fact and would not estop the owner from later asserting his lien against such purchasers for an unpaid portion of the purchase price.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

2. LOGS AND LOGGING (§ 3*)—SALES AND CONVEYANCES OF STANDING TIMBER—VENDOR'S LIEN—ESTOPPEL TO ASSERT.

Though persons who purchased the rights of a vendee in standing timber stated to the vendor, on being apprised that he was going to sell the timber, that they had made arrangements for the wood with such vendee, there was no such notice given as would preclude the vendor from asserting his right to a lien after such persons had purchased the timber and expended large sums of money in cutting and hauling it, as he could assume that any arrangements made with the vendee would be made subject to his rights.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

3. LOGS AND LOGGING (§ 3*)—SALES AND CONVEYANCES OF STANDING TIMBER—VENDOR'S LIEN—RIGHTS AND LIABILITIES OF SUBSEQUENT PURCHASERS.

Where wood was in the tree on the premises of the vendor of a right thereto at the time his vendee attempted to sell it, the second purchaser became impressed with a duty to inquire as to the vendor's rights which charged it with knowledge of all that might have been discovered, and where the contract clearly showed that a portion of the purchase price was unpaid, the vendor's lien could be asserted against such purchaser.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

4. LOGS AND LOGGING (§ 3*)—SALES AND CONVEYANCES OF STANDING TIMBER—VENDOR'S LIEN—CONTRACT.

Where a contract for the sale of standing timber showed the payment by the vendee of a portion of the purchase price in cash, an agreement to pay smaller portions in sixty days, when one-third of the timber was cut "and the balance * * * to be paid when one-half of the said timber is cut," and also gave a right to possession with a right to ingress and egress to cut and remove the timber for a period of five years, the stipulation for possession for five years must be held to limit the right of the vendee to cut and remove the timber to five years, rather than to grant an absolute right, to harmonize it with the provision for the payment of all of the purchase price when one-half of the timber is cut, and the contract held to grant only the right to cut one-half of the timber and make the right to cut the remaining one-half to depend upon the payment of the full purchase price, and where all the wood had been cut and corded, the vendor was entitled thereunder to assert his lien upon the half to which he had not lost his right of possession.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

5. LOGS AND LOGGING (§ 3*)—VENDOR'S LIEN—CONTRACT.

Where a contract for the sale of growing timber provided that, in addition to a contract price, the vendee would deliver a certain number of cords of wood to the vendor, the vendor would have a right to the asser-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of a lien for the value of such wood in addition to the lien for the unpaid purchase price, where all the timber had been cut.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3.*]

Action by George S. Arnold against Rex Spring and others. Judgment for plaintiff.

D. D. Dickson and F. A. Robbins, for plaintiff.

Elliott & Bodine, Allen J. Hastings, and W. D. Olmsted, for defendants.

BROWN, J. On December 20, 1909, the plaintiff by a written instrument sold to the defendant Spring all the standing timber on plaintiff's farm of about 280 acres, with certain reservations, situate in the town of Angelica, Allegany county, N. Y., for the consideration of $4,000, to be paid as follows: $1,000 on that date; $1,000 within 60 days; $1,000 when one-third of the timber should be cut; and the balance of $1,000 when one-half of the timber should be cut. The defendant paid $1,000 on such purchase price on such date and has failed to pay any of the balance thereof. On December 20, 1909, the defendant Spring sold to the defendants Dudley P. Hall, Zell D. Perry, Val Collins, and Jesse S. Clark, copartners as Genesee Wood Company, all the small timber and the tops of the saw timber suitable for chemical wood for the sum of $1,000, which was paid that day by executing and delivering to defendant Spring their promissory note for that amount, due in four months. In the summer of 1910 the defendant Spring cut, or caused to be cut, all the standing timber and prior to December, 1910, removed all the sawlogs from plaintiff's premises, excepting about 14,000 feet. During the summer of 1910 the Genesee Wood Company entered upon said premises and cut the small timber and the tops of the saw timber into 52-inch lengths for chemical wood and piled the same into suitable piles for measuring as cordwood. At intervals during the progress of the work, defendant Lackawanna Chemical Company caused the chemical wood to be measured, and advanced to the Genesee Wood Company the sum of $1.70 per cord to cover the expense of cutting and piling; the Genesee Wood Company agreeing to haul the chemical wood thus measured and paid for, to the railroad for shipment to the chemical works of the Lackawanna Chemical Company, in McKean county, Pa. In pursuance of such arrangement, the Genesee Wood Company cut and piled all the chemical wood on said premises, amounting to 2,580 cords, and entered into a contract with defendant Calkins to have the same hauled from said premises to the railroad. On November 24, 1910, the plaintiff forbade the removal of such chemical wood from his premises, until the balance due him from defendant Spring for the purchase price thereof, viz., the sum of $3,000, and interest, should be paid. The defendants removed 25 cords of such wood. The defendant Spring being insolvent, and the purchase price not having been paid, the plaintiff on December 28, 1910, brought this action to foreclose his vendor's lien, procured a temporary injunction,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

restraining the removal of the chemical wood from his premises during the pendency of the action, which was vacated upon defendant Genesee Wood Company's filing their undertaking, conditioned to pay plaintiff the damages he would sustain by the removal of the same from his premises. Thereupon the chemical wood was taken from the plaintiff.

The defendants make two answers: First, that the conduct of the plaintiff has been such that he is estopped from claiming that he has not been paid in full for such chemical wood; and, second, that under and by virtue of the written contract made with the defendant Spring, the plaintiff has lost all right to the possession of the chemical wood, that the Genesee Wood Company and the Lackawanna Chemical Company have acquired such right of possession, and that plaintiff can have no remedy as against the chemical wood.

The first defense depends largely upon the question as to whether the defendant Genesee Wood Company in purchasing from defendant Spring acted in good faith, without notice of plaintiff's claim for the unpaid purchase price of such chemical wood.

It satisfactorily appears that neither the defendant Genesee Wood Company, nor the Lackawanna Chemical Company, ever saw the contract executed by the plaintiff to the defendant Spring prior to December, 1910; that neither of them made any inquiries of either Spring or the plaintiff as to the contents of such contract; that the Genesee Wood Company cut and piled the chemical wood in entire ignorance of the terms upon which Arnold sold the timber to Spring; that the Lackawanna Chemical Company advanced to the Genesee Wood Company the sum of $1.70 per cord for the cutting and piling of the chemical wood without any inquiry as to the rights of the plaintiff under his contract; that the Genesee Wood Company paid to the defendant Spring $1,000, the entire purchase price of the chemical wood, without making any attempt to learn of the contract rights of the plaintiff.

[1] The defendants the Genesee Wood Company and the Lackawanna Chemical Company now claim that they having purchased of Spring for value, in ignorance of any indebtedness of Spring to the plaintiff for the unpaid purchase price of the chemical wood, are bona fide owners thereof, without notice of any rights plaintiff may have under the contract. The defendants assert that they were not bound to make any inquiries as to the terms of the sale by plaintiff to Spring, for the reason that a short time before the sale to Spring the Genesee Wood Company was advised by the plaintiff that he would sell the timber for $4,000 cash, and inasmuch as defendant Spring stated to the Genesee Wood Company, when he sold the chemical wood to that company, that he had paid plaintiff the full purchase price in cash, that they were justified in honestly believing that the timber had all been paid for, and that plaintiff is estopped from claiming that such purchase price has not in fact been paid. This contention cannot be sustained. It is not believed that the mere statement of the plaintiff to the Genesee Wood Company that he would sell his standing timber for $4,000 cash estops him from asserting

against such company that he in fact sold to Spring for $4,000 to be paid in installments. The statement made early in December, 1909, that the plaintiff would sell the timber for $4,000 cash, did not justify or warrant the Genesee Wood Company in believing on the 20th of December, 1909, that the plaintiff had sold to Spring on that day the timber for $4,000, and that such purchase price had been fully paid. It is not the case of the plaintiff telling the Genesee Wood Company after his sale to Spring that he had sold the timber to Spring for $4,000 cash. It was not in any manner the statement of an existing fact. The defendant Spring testifies that he told the Genesee Wood Company on December 20, 1909, that there was $1,000 due to Arnold; that if they would advance $1,000 he could pay plaintiff in full.

[2] The defendants also claim that the plaintiff during the progress of the work, having knowledge that the Genesee Wood Company was actively engaged in the business of cutting, hauling, and piling the chemical wood, was bound to inquire of that company as to its alleged rights, and having remained silent, permitting it to expend its money and labor in such work without advising it that defendant Spring had not paid him his purchase price, he is estopped from now urging his vendor's lien. Such claim is based upon the following facts: Some time before December 20, 1909, the Genesee Wood Company sought to purchase the timber from the plaintiff. This offer not having been accepted, the plaintiff agreed to notify them if he had a chance to sell it. Accordingly, on the forenoon of December 20, 1909, before the contract with defendant Spring was executed, the plaintiff called defendant Hall on the telephone at Little Genesee and advised him that he had a purchaser for the timber; that Hall inquired who it was, and plaintiff answered that it was defendant Spring. Whereupon defendant Hall replied, "All right, if it is Mr. Spring, let him have it, as we have made arrangements for the wood," and defendant Hall says that plaintiff replied, "All right." The plaintiff states that he did not understand defendant Hall to say any such thing.

Even assuming such conversation to have taken place over the telephone, it cannot be said from it that the plaintiff knew that the Genesee Wood Company had acquired any right to the timber through Spring that called him (the plaintiff) to advise that company that the timber had not been paid for. Suppose Hall did say to plaintiff, before his contract with Spring was drawn or signed, that he (Hall) had arranged with Spring for the wood; plaintiff could not thereby be charged with knowledge that the Genesee Wood Company was to pay Spring in full for the purchase price without notice that plaintiff had not been paid. Plaintiff, even if told that the Genesee Wood Company had arranged with Spring to have the wood before Spring had purchased, would be abundantly justified in believing that whatever arrangements had been or would be made would be subject to his rights. Plaintiff after this telephone talk on December 20, 1909, never saw or heard from the Genesee Wood Company for nearly a year. During the spring, summer, and fall of 1910,

while the timber was being cut and the chemical wood cut and piled, the only person claiming to have talked with the plaintiff relative to the work and its progress was the defendant Spring, and he never suggested to plaintiff that any other than himself had controlled the operations, and the conclusion is reached that during the time the timber was being cut, the logs removed from the premises, and the tops, etc., cut into chemical wood, the plaintiff had no knowledge or intimation that any of the defendants except the defendant Spring had any interest, claim, or rights in the timber or wood. The first intimation that plaintiff had that the defendants, other than Spring, had any interest in the wood, was on November 24, 1910, when defendant Calkins advised him that he was about to haul it away for the Genesee Wood Company. Thereupon plaintiff promptly telephoned defendant Hall and told him that the wood could not be removed until he was paid.

[3] The defendants Genesee Wood Company, Lackawanna Chemical Company, and Calkins having arranged for the possession of the chemical wood, through the defendant Spring, at a time when it was in the possession of the plaintiff, they must be held to have acquired no better title thereto, and no superior rights therein, than had their vendor, the defendant Spring. The chemical wood being in the tree and standing timber on plaintiff's premises at the time defendant Spring assumed to sell it to the Genesee Wood Company, that defendant had imposed upon it the duty of inquiry as to the rights of its vendor, and such inquiry being the duty of that company, it is charged with knowledge of all that would have been discovered had it performed its duty. Means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself. These defendants claim title and right of possession under defendant Spring, and if, as against the defendant Spring, the plaintiff has a vendor's lien, it is good as against all the defendants. In so far as the fact of the unpaid purchase price is an essential prerequisite for a vendor's lien, that fact would have clearly appeared by an inspection of the contract between plaintiff and defendant Spring; when such fact appears in the very paper under which the defendants claim, they cannot plead the good faith of their purchase without notice of such unpaid purchase price, nor resist the enforcement of the lien upon that ground. In Thornton v. Knox, 6 B. Mon. (Ky.) 74, the vendor's deed to the vendee recited, "in consideration of the sum $917.50, to me in hand paid, or secured to be paid, the receipt whereof is hereby acknowledged," it was held that such recital was sufficient to put the vendee's mortgagee upon inquiry as to whether the vendor's lien had been paid. It is elementary that a recital in a deed that the purchase money remains unpaid is notice of that fact to a subsequent purchaser; a subsequent purchaser will be affected with notice if he might have learned of the nonpayment of the purchase price by examining the title deed of his vendor.

[4] The rights of the plaintiff not having been impaired by any conversation with the members of the Genesee Wood Company, that company not having gained any rights by virtue of those conversa-

tions, and the company being forced to rely solely upon the right to the possession of the chemical wood, of the defendant Spring, it remains to be seen what are the rights of the parties thereto under the contract. The existence of the plaintiff's vendor's lien depends upon his right to the possession of the standing timber until the payment of the full purchase price to him.

The contract provides:

"And the party of the second part (Spring) agrees to pay to the party of the first part (plaintiff) the sum of $4,000.00 as follows $1,000.00 paid in cash on this date, the receipt of which is hereby acknowledged. $1,000.00 within sixty days from the date hereof. $1,000.00 when one-third of the timber is cut by second party and the balance $1,000.00 to be paid when one-half of the said timber is cut, together with annual interest on the 20th day of December in each and every year from the date hereof on all unpaid sums until the whole amount is fully paid. * * * The right of possession is hereby given, with the right of ingress and egress by first party to second party for all purposes of cutting down and removing the timber so sold and purchased, for the period of five years from this date. * * * The party of the second part has the right of possession for the purpose of carrying out the provisions of this contract or agreement from and after this date."

The right of possession granted to defendant Spring by each of the foregoing quoted sentences is for a named purpose, and such purpose must limit the rights of possession. One is for the purpose of cutting and removing timber for five years, and the other is for the purpose of carrying out the provisions of the contract. One of the provisions of the contract is that the defendant Spring shall pay $1,000 within sixty days, $1,000 when one-third of the timber is cut, and $1,000 when one-half of the timber is cut. For the plaintiff this is the most essential of all provisions. Reading the last-quoted sentence relative to possession in connection with the quoted clause providing for the payment of the $3,000 in installments, and with the facts of the insolvency of the defendant Spring in mind, it is apparent that the design on the part of the defendant Spring was to meet the payments as they matured from avails of sales of timber, and that the parties intended that, under this sentence, possession was to be had by defendant Spring for the purpose of making the payments.

In construing the last-quoted sentence relative to possession as referring to the clause providing for the payments, it is seen that defendant Spring could not obtain rightful possession of all the timber without paying for it. The fact that the defendant Spring agreed to pay the full purchase price at the time when one-half of the timber should be cut is an indication that both the plaintiff and defendant Spring intended that the remaining half of the timber should not be cut before the full purchase price was paid. Such being the intention of the parties, Spring could not get rightful possession of the remaining half of the standing timber until he could rightfully cut it; and he could not rightfully cut it until he had paid the full purchase price. Spring or his vendees cannot be deemed in possession of any of the chemical wood remaining on plaintiff's lands unless the right to such possession is provided for by the contract. Spring or his vendees not having the right to the possession of the remaining half until the purchase price was paid, and such purchase price not having been

paid, it follows that the plaintiff has the right to the possession thereof, and the defendants cannot be deemed in rightful possession of all the 2,555 cords of chemical wood unless they acquired such right of possession by virtue of the earlier quoted provision of the contract providing for possession for the purpose of cutting and removing the timber for five years. The express purpose of the possession being for the purpose of cutting and removing timber for five years, it must be held that that sentence was used to limit the right of defendant Spring in cutting and removing timber to five years. After having paid the full purchase price, he could not cut or remove any timber after the expiration of the five years; his title depended upon his removing the timber within the five years; he obtained no title to any timber that would not be cut and removed in the five years. Such being the purpose and object of such provision, there is no inconsistency between the two sentences; there is no conflict in their meaning. The contract as thus read is harmonious, and full force and effect is given to all its provisions. If full, complete possession for the purpose of sale, without paying for the timber, is to be claimed to have been intentionally provided for by the first quoted sentence, such assumed intention must give way to that later expressed in the second quoted sentence, whereby the possession is limited, during the five years, for the purpose of carrying out the contract; that is, for the purpose of cutting one-half the timber and paying the full purchase price before any right accrues to cut and remove the remaining half.

Such being the rights of the parties under this contract, it follows that defendant Spring rightfully came into possession of one-half of the chemical wood, and through such rightful possession of the defendant Spring the defendants Genesee Wood Company and the Lackawanna Chemical Company, having cut and piled the same and paid the defendant Spring therefor, must as against the plaintiff be deemed the owners and entitled to the possession thereof. The plaintiff having by his contract authorized the defendant Spring to cut and remove the same and deliver possession thereof, he could not, after the defendants Genesee Wood Company and the Lackawanna Chemical Company had acquired possession, rightfully regain possession, and plaintiff has lost his right to a vendor's lien upon the one-half of such chemical wood, viz., 1,277½ cords, except as to the stove wood hereinafter referred to.

The plaintiff, never having lost his right to the possession of 1,277½ cords of the chemical wood, the remaining half thereof, and having enjoined its removal from his premises and taken possession thereof, it must be deemed to have been rightfully in his possession at the time of the commencement of this action. Under the contract the plaintiff had the right to have this 1,277½ cords of chemical wood remain in the tree upon his farm until he was fully paid. The defendants could not rightfully cut it, nor gain rightful possession thereof, without paying its purchase price. Their act in cutting it was in violation of plaintiff's rights. They expended their labor in cutting it subject to plaintiff's rights to take possession thereof in the event

that Spring did not pay for it and should become insolvent before plaintiff should take such possession. Plaintiff had a lien thereon at the time of the commencement of this action for the amount due him to the extent of its value as he found it at that time and which was $1.85 per cord. The defendants, having removed the chemical wood from plaintiff's possession under the order of the court permitting them to do so, upon filing an undertaking to pay plaintiff's damages by such removal, must pay plaintiff the sum of $2,363.37, the amount of his lien thereon at the time of such taking.

[5] It is also provided by the contract that the defendant Spring, as a part of the purchase price of such timber, in addition to the $4,000 should from the timber so purchased by him deliver to plaintiff, at Angelica, N. Y., 125 cords of 16-inch beech and maple stove wood of merchantable quality on the 15th day of March in each year for four years from date of contract, and that defendant Spring should keep growing a sufficient quantity of such beech and maple in order that he might be able to cut down, manufacture, and deliver from growing timber, each year, such stove wood. The defendant paid no attention to this provision of the contract. The timber has been cut and the premises stripped of all merchantable growing beech and maple stove wood. The defendants had no right to cut this merchantable growing beech and maple stove wood timber and remove it from the premises. During the summer of 1910 defendant Spring had delivered to the plaintiff 80 cords of stove wood, leaving 420 cords to be delivered out of the timber that had been cut into chemical wood. At the time the plaintiff forbid the defendants removing the 2,500 cords of chemical wood, he was entitled to 140 cords thereof necessary to make the 420 cords of 16-inch beech and maple suitable for stove wood. The defendant Spring could not rightfully deliver possession of this 140 cords, to defendants. They could not and did not obtain rightful possession thereof. The possession was rightfully in the plaintiff. The plaintiff has a vendor's lien thereon for its value as it was sold to defendant Spring, who agreed by contract to deliver it to plaintiff as stove wood. The defendants are chargeable with knowledge that they could obtain no title thereto from Spring. The defendants, having cut the 420 cords into 52-inch lengths, knowing that it was not their property and that it must be delivered to the plaintiff, have lost their labor thereon, and the plaintiff is entitled to enforce his vendor's lien upon 140 cords of chemical wood in the condition the defendants cut and piled it on his premises. It was worth in that condition, at the time plaintiff forbid its removal, $1.85 per cord, or $259. The defendants having removed the same, the plaintiff has been damaged to the amount of its value by such removal.

Judgment is awarded plaintiff for foreclosure, etc., for the sum of $2,622.37 and interest from March 1, 1911, to wit, the sum of $2,812.05, against the defendant Genesee Wood Company; and against the defendant Spring for the deficiency of plaintiff's claim, together with costs. Let findings be prepared.